UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DUSTIN T., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 1:20-cv-00310-GZS |
| ) | |
| ANDREW M. SAUL, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant ) | |

**REPORT AND RECOMMENDED DECISION**

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

**THE ADMINISTRATIVE FINDINGS**

The Commissioner's final decision is the September 3, 2019 decision of the

Administrative Law Judge. (ALJ Decision, ECF No. 16-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of degenerative disc disease of the lumbar spine, obesity, attention deficit-hyperactivity disorder, depression, and anxiety. (R. 17.) The ALJ further found that as the result of the impairments, Plaintiff has a residual functional capacity (RFC) to perform light work, except he may only occasionally climb, kneel, crouch, or crawl, and must be able to change positions for three to five minutes every hour; and he is limited to performing simple tasks, can understand and remember simple instructions and concentrate for two-hour periods over an eight-hour day on simple tasks, interact appropriately with coworkers and supervisors, and adapt to changes in the work setting, but should avoid work that requires frequent contact with the general public. (R.20-21.)

Based on the RFC finding, the ALJ concluded that Plaintiff could not return to past relevant work, but could perform other substantial gainful activity, including the specific representative jobs of marker, assembler and electronic accessory assembler. (R. 32.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y*

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

*of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that the ALJ erred (1) in his determination that Plaintiff's impairments did not meet or equal the criteria of Listing 1.04 (Disorders of the Spine), 20 C.F.R. Part 404, Subpt. P, App. 1 § 104, and (2) in his assessment of Plaintiff's RFC.

**A. Step 3 – the Listings**

At Step 3 of the sequential evaluation process, the Commissioner considers whether a claimant's impairments meet or equal the criteria set forth in the "listings" found in appendix 1 of the disability regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If so, the claimant is deemed disabled without any further analysis of the claimant's residual functional capacity to perform past relevant work or other work in the national economy. *Id*., §§ 404.1520(d); 416.920(d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) ("The listings are so constructed that an individual with an impairment(s) that meets or is equivalent in severity to the criteria of a listing could not reasonably be expected to do any gainful activity."); 20 C.F.R. §§ 404.1525(a); 416.925(a) (same). At Step 3, the claimant bears the burden of proving that her impairment or

3

combination of impairments meets or equals a listing. 20 C.F.R. §§ 404.1520(d); 416.920(d); *Freeman v. Barnhart*, 274 F.2d 606, 608 (1st Cir. 2001). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). However, if a claimant has an impairment identified in a listing, but does not meet one or more of the criteria of the listing, the claimant may still be found disabled at Step 3 if the claimant has "other findings related to [his] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. §§ 404.1526(b)(1)(ii); 416.926(b)(1)(ii) (defining "medical equivalence"). Moreover, with respect to musculoskeletal listings, "[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(D).

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, specifically Listing 1.04, disorders of the spine. To meet Listing 1.04, a claimant must show that he or she has a disorder of the spine with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively[.][2]

The ALJ explained that he considered the opinion of the state agency medical consultant, Sharon Hogan, M.D., who found the impairment did not satisfy the listing criteria. (R. 18-19; [133, 150].) He also noted that "[n]o treating or examining physician has proffered findings that are equivalent in severity to the criteria of [Listing 1.04] or any other listed impairments." (R. 18.)

In her RFC assessment, Dr. Hogan explained and supported Plaintiff's exertional limitations, which the ALJ adopted in his RFC determination, as follows:

> [Plaintiff] [h]as chronic LBP with X-ray 10.9.13 revealing "considerable narrowing on a chronic basis of the L5-S1 disc space with some secondary arthritic change. There is no spondylolisthesis at any lumbar level. X-ray report 05/04/2012 commented on bilateral L5 spondylolysis with no spondylolisthesis." "Has diffuse degenerative changes in the thoracic spine and some degenerative changes in disc narrowing at L5-S1."
>
> At April 2018 CE [Plaintiff] had an antalgic gait, which was steady. He came with a cane but was able to ambulate short distances without it. SLR neg bilaterally. He was able to squat and rise from a standing position with difficulty. The claimant was able to stand up from a sitting position with ease. The claimant was able to tandem walk with moderate difficulty. The claimant was not able to walk on their heels. The claimant was able to walk on their toes with moderate difficulty. The flexion/ext and ankle dorsiflexion 4/6.

---

[2] Under Defendant's regulations, the "inability to ambulate effectively" is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning … to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Part 404, Subpt. P, App. 1 § 100(B)(2)(b)(1).

(R. 135, quoting and citing 547, 1296; 926-27.)

The October 9, 2013, x-ray referenced by Dr. Hogan revealed no acute process. (R. 547.) Treating provider David C. Urquia, M.D., reviewed the x-ray and found "considerable narrowing on a chronic basis of the L5-S1 disc space with some secondary arthritic change[, but] no spondylolisthesis there or any lumbar level." (R. 680.) Dr. Urquia diagnosed Plaintiff with disc degeneration, "at least at the L5-S1 level," finding no instability or spondylolisthesis, but questioning whether there was a pars defect. (*Id*.) In the absence of spondylolisthesis, Dr. Urquia did not recommend spinal fusion surgery. (R. 680-81.) Dr. Urquia also noted that Plaintiff's additional risk factors of obesity and smoking "would make him a much poorer candidate for lumbar fusion anyway." (R. 681.)

Plaintiff contends that the ALJ cannot supportably rely on Dr. Hogan's opinion because Dr. Hogan did not have the opportunity to review the results of a subsequent MRI and evaluation of Plaintiff conducted by John J. Walsh, M.D. The MRI and evaluation were conducted after Dr. Hogan's opinion was submitted on April 26, 2018.[3]

The report of the July 26, 2018, MRI of Plaintiff's lumbar spine states that there is

---

[3] Plaintiff was also examined by Fred Fridman, D.O., on April 14, 2018, who noted negative straight-leg testing, but also noted that Plaintiff was unable to tolerate the testing over 30 degrees due to pain. (R. 1299.) Dr. Fridman opined that Plaintiff could sit for one hour at a time before needing a break, for four hours total in an eight-hour workday, stand and/or walk for 30 minutes before needing a break, for two hours total in an eight-hour workday, carry five pounds frequently and ten pounds occasionally, and would "benefit" from the use of a single point cane for long distances or uneven terrain. (*Id*.) Dr. Fridman conducted an earlier examination of Plaintiff on April 27, 2017. (R. 924-28.) That examination also found a bilaterally negative straight-leg test. (R. 926.) In this report, Dr. Fridman concluded that Plaintiff had no functional limitations, noting that although "there appeared to be diffuse weakness and wide spread tenderness throughout the musculoskeletal examination[,] this seemed to resolve with distraction and ultimately [Plaintiff] was observed walking without his cane with a normal gait …." (R. 928.) In his assessment of Plaintiff's RFC, the ALJ gave "partial weight" to Dr. Fridman's opinions, assigning less weight to the 2018 opinion. (R. 29-30.)

"moderate broad-based disc bulge … [that] result[s] in at least contact if not very slight distortion of the exiting right L5 nerve root[, which] is probably also at least contacted if not slightly distorted by bulging disc and osteophyte in the left foramen. There is facet degenerative change … and may contribute to some foraminal narrowing here." (R. 1317.) No significant central canal stenosis was noted. (*Id.*)

Dr. Walsh examined Plaintiff on May 20, 2019. (R. 1390-94.) He reviewed the MRI results, noting "[b]road-based disc bulging and foraminal herniations on the right at L5/S1 with significant mass effect on the right L5 nerve root and to a lesser degree the left L5 nerve root." (R. 1317, 1392.) The examination revealed positive straight-leg raising in both the seated and recumbent positions. (R. 1392, 1393.) Dr. Walsh opined that as a result of Plaintiff's spinal impairments and the attendant physical restrictions, Plaintiff is permanently and totally disabled. (R. 1393.)

Treating provider Susan Housman, D.O., saw Plaintiff on April 29, 2019, and also reviewed the MRI report, noting that it "shows broad-based bulging and/or foraminal herniation on the right at L5-S1 with mass effect on right nerve root and a less degree on the left L5 nerve root." (R. 1307.) She listed among Plaintiff's active problems chronic bilateral low back pain with bilateral sciatica and lumbar spondylosis. (R. 1309.) Dr. Housman noted that Plaintiff needed to stand up and sit down throughout his visit due to pain. (R. 1310.) She also observed that Plaintiff was not using his cane on the day of his visit. (R. 1310.)

The ALJ did not discuss the MRI results in his analysis at step 3, but he did reference the MRI report in his analysis of Plaintiff's RFC. He commented that the MRI "showed

7

broad-based bulging disc herniation and/or foraminal herniation on the right at L5-S1 with mass effect on the right nerve root." (R. 28.)  In giving Dr. Walsh's opinion "little weight," the ALJ also explained that Plaintiff's "MRI findings have shown some degree of disc herniation, but they have not compelled his providers to refer him for a neurosurgical evaluation or any other more aggressive forms of treatment." (R. 30.)  In discounting the opinion of and limitations determined by consultative examiner Fred Fridman, D.O., the ALJ found the limitations were inconsistent with, among other things, "limited findings upon physical examination and diagnostic MRI study." (R. 29-30.)

      Plaintiff does not make the required showing that his impairment meets or medically equals all the elements of any of the subsections of Listing 1.04.  There is no evidence of spinal arachnoiditis (subsection B) and insufficient evidence of lumbar spinal stenosis resulting in the inability to ambulate effectively (subsection C).  With respect to subsection A of Listing 1.04, Plaintiff arguably has presented some evidence of possible nerve root compression through the 2018 MRI results.  (R. 1307, 1392.)  He has, however, failed to provide evidence of positive straight-leg raising tests "established by a record of ongoing … evaluation" over a period of time.  20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(D); *see also* Soc. Sec. Acquiescence Ruling 15-1(4), 80 Fed. Reg. 57418-02, 2015 WL 5564523, at \*57420 (Sept. 23, 2015) ("when the listing criteria are … present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A.").  There appears to be only one instance of an positive straight-leg raising test, while both sitting and supine. (R. 1392, 1393.)  The ALJ's conclusion that Plaintiff's impairments did not meet or equal a listing is supportable.

8

### B.  RFC Finding

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ impermissibly interpreted medical data generated after Dr. Hogan issued the report on which the ALJ relied to formulate the RFC.

Although an ALJ is not required to call a medical expert, *see Hallock v. Astrue*, No. 2:10-cv-00374-DBH, 2011 WL 4458978, at *2 (D. Me. Sept. 23, 2011) (rec. dec., *aff'd* Feb. 28, 2010), an ALJ may not substitute his or her judgment for that of an expert, nor translate raw medical data into an RFC assessment.  *See, e.g., Nguyen*, 172 F.3d at 35; *Manso-Pizzaro*, 67 F.3d at 16.  Here, when he discounted the medical opinion of Dr. Fridman, the ALJ referenced the "limited findings" of the "diagnostic MRI study." (R. 30.) There is no medical opinion of record that characterizes the finding of the MRI as limited. Dr. Hogan, the consultant expert upon whom the ALJ principally relied in forming Plaintiff's RFC, did not review and thus has not assessed the MRI report.  Dr. Hogan in part based her opinion on her review of x-rays from 2012 and 2013.  (R. 135.)  As noted by Dr. Hogan, the x-rays showed disc narrowing with some arthritic changes.  (*Id*.)  The July 26, 2018, MRI report, which stated "[b]road-based disc bulging and foraminal herniations on the right at L5/S1 with significant mass effect on the right L5 nerve root and to a lesser degree the left L5 nerve root" (R. 1317), suggests something different and potentially more involved than the x-rays revealed.

Dr. Walsh, who reviewed the MRI report, wrote:

> The combination of the chronic lumbar spine conditions, which includes; Herniated Lumbar Intervertebral Disc at L5/S1 with bilateral L5/S1 Radiculopathy, Spinal Stenosis, and extensive lumbar Degenerative Disc

9

> Disease is the most physically disabling Spinal Disorder. These have resulted in evidence of nerve root compression characterized by neural anatomic distribution of pain, limitation of spinal motion, motor loss accompanied by sensory deficit in the L5 and S1 distribution in both lower extremities and a positive straight leg raising test in both the seated and recumbent position. These structural conditions have been documented by objective diagnostic studies and confirmed on history and physical examination.

(R. 1393.) Dr. Walsh's reference to "objective diagnostic studies" is undoubtedly to the 2018 MRI report he noted in his report. (R. 1392.) The medical opinion of record regarding the significance of the 2018 MRI result thus does not appear to consider the MRI findings to be limited.

An ALJ "is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by … judging whether later submitted evidence is material …." *Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *6, n.5 (D. Me. Jan. 17, 2011). In this case, there is no conflict in expert opinion about the significance of the MRI report as Dr. Hogan did not have the opportunity to review the report. The ALJ's characterization of the report as "limited" is his lay assessment. The potential effect of an MRI report that reveals "[b]road-based disc bulging and foraminal herniations on the right at L5/S1 with significant mass effect on the right L5 nerve root and to a lesser degree the left L5 nerve root" is not within the ALJ's layperson expertise. Accordingly, remand is warranted.[4]

---

[4] Because I have determined that remand is warranted, I have not addressed Plaintiff's argument that the ALJ also erred in failing to discuss Plaintiff's need to use a prescribed cane to walk more than short distances. (SOE at 24-25.)

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 20th day of July, 2021.